# Exhibit A

Hearing Date: 2/2/2022 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
    Cook County, IL

FILED DATE: 10/4/2021 9:17 PM  2021CH05066

FILED
10/4/2021 9:17 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15074461

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals, )<br><br>*Plaintiff*, )<br><br>v. )<br><br>FITTINGBOX INC., a Florida Corporation; MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, Inc., an Illinois Corporation, )<br><br>*Defendants*. ) | No.<br><br>**2021CH05066**<br><br>Hon. |

## CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff Christopher Pecho ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Defendants Fittingbox, Inc. ("Fittingbox"), and Maui Jim, Inc. and Maui Jim USA, Inc. (together "Maui Jim"), for their violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for persons injured by Defendants' conduct. Plaintiff alleges the following based on personal knowledge as to his own experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

### INTRODUCTION

1.    BIPA defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

2.      This case concerns the misuse of individuals' biometrics in the form of scans of their facial geometry by Defendant Fittingbox, a provider of biometrically-enabled augmented reality "Virtual Try-On" software, and Defendant Maui Jim, an eyewear retailer that utilized Fittingbox's technology to market and sell its eyewear products. Through Defendants' utilization of Fittingbox's Virtual Try-On software, Defendants have captured, collected, disseminated, and/or otherwise used the biometrics of Plaintiff and other consumers throughout Illinois, without their informed written consent as required by law.

3.      Facial geometry is a unique and permanent biometric identifier associated with each individual. The unauthorized handling of such sensitive information exposes consumers to serious and irreversible privacy risks. If for example, a database containing scans of face geometry or other sensitive biometric data is hacked, breached, or otherwise exposed, consumers cannot simply change their biometric identifiers like they could reset a password or cancel a credit card.

4.      Having recognized that biometrics present unique security concerns, the Illinois Legislature enacted BIPA to regulate companies that collect and store Illinois citizens' biometrics. BIPA provides, *inter alia*, that private entities, such as Defendants, may not collect, capture, purchase, receive through trade or otherwise obtain an individual's biometrics unless they first:

> (1) inform the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored, 740 ILCS 14/15(b)(1);

> (2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored, and used, 740 ILCS 14/15(b)(2); and

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

(3)  receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information, 740 ILCS 14/15(b)(3).

5.     BIPA also requires a private entity in possession of biometric identifiers or biometric information  to make publicly available a written policy outlining its storage and destruction policies for such biometric identifiers, and/or any biometric information derived from such identifiers. 750 ILCS 14/15(a).

6.     Finally, private entities are prohibited from profiting from an individual's biometric identifiers or biometric information, and from disclosing or disseminating the same to third parties without informed consent. 740 ILCS 14/15(c)–(d).

7.     The deprivation of the statutory rights conferred by BIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

8.     In direct violation of each of the foregoing provisions, Defendants are actively capturing, collecting, storing, and otherwise obtaining—without providing notice, obtaining informed written consent, or publishing data retention policies—the biometrics of thousands of individuals throughout Illinois who use Fittingbox's Virtual Try-On software.

9.     Specifically, Defendants have created, captured, collected, used, and stored thousands of templates of facial geometry—highly detailed geometric maps of the face—from thousands of Illinois individuals including Illinois residents like Plaintiff. Defendants create these templates of facial geometry using sophisticated facial recognition technology that scans, extracts, and analyzes data from the points and contours of faces that appear in photos and videos taken on mobile devices and computers and uses such scans of facial geometry to increase sales of luxury eyewear and other accessories. Each template of facial geometry that Defendants extract from

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

consumers is unique to that individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

10.     Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper, or its electronic equivalent. BIPA's requirements bestow a right to privacy in biometrics and a right to make an informed decision when electing whether to provide or withhold biometrics.

11.     Defendants collect the facial geometry of their clients' customers in Illinois without first obtaining those individuals' informed written consent and informing them how long they intend to keep such biometric data, as required by BIPA.

12.     Defendants also store those individuals' biometric data but have failed to publish a written policy specifying how long they retain such data and when they will destroy it, as required by BIPA.

13.     Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendants in capturing, collecting, storing, using, and disclosing his biometrics, and those of hundreds of other consumers throughout the state of Illinois, without their informed written consent, and without making publicly available a written policy detailing how they store and dispose of this irreplaceable information, in direct violation of BIPA.

14.     On behalf of himself and the proposed Class and Subclass defined below, Plaintiff seeks an injunction requiring Defendants to comply with BIPA, as well as an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

15.     Defendant Fittingbox, Inc. is a Florida corporation that conducts substantial business in and markets its services throughout Illinois, including in Cook County.

4

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

16.     Defendants Maui Jim, Inc. and Maui Jim USA, Inc, are Illinois corporations that conduct substantial business throughout Illinois, including in Cook County. Maui Jim's headquarters are located at One Aloha Lane, Peoria, IL 61615.

17.     At all relevant times, Plaintiff Christopher Pecho has been a resident and citizen of the State of Illinois, specifically Cook County.

## JURISDICTION AND VENUE

18.     This Court may assert personal jurisdiction over Maui Jim pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Maui Jim, Inc. and Maui Jim USA, Inc. are corporations organized under the laws of this State, are doing business within this State, and because Plaintiff's claims arise out of Maui Jim's unlawful in-state actions, as Maui Jim captured, collected, stored, and used Plaintiff's biometric identifiers and/or biometric information in this State.

19.     This Court may assert personal jurisdiction over Fittingbox in accordance with the Illinois Constitution and the Constitution of the United States because Fittingbox advertises, solicits, and conducts substantial business within Illinois. At the very least, Fittingbox conducts substantial business within Illinois through its business relationship with Maui Jim, a company headquartered in Illinois and with its principal place of business in Illinois.

20.     This court may also assert personal jurisdiction over Fittingbox because Fittingbox transacts business within Illinois and has gathered the facial biometrics of individuals within Illinois, including Plaintiff's facial biometrics. In addition, Fittingbox prominently advertises its business relationship with Maui Jim, an Illinois-based company, on the homepage of its website in its marketing efforts to prospective clients, including Illinois based customers.

5

FILED DATE: 10/4/2021 9:17 PM   2021CH05066



*A list of Fittingbox customers as displayed on the fittingbox.com homepage*

21.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because both Maui Jim and Fittingbox are doing business in Cook County and thus reside there under § 2-102, and because the biometric transactions out of which this cause of action arises occurred in Cook County.

**FACTS SPECIFIC TO PLAINTIFF**

22.     As shown below, Defendant Fittingbox has developed a biometric capture and analysis software that is able to create a biometric face scan of an individual.



FILED DATE: 10/4/2021 9:17 PM    2021CH05066

23.     Fittingbox utilizes its facial biometric software to power its "Virtual Try-On" service that it markets to eyewear companies. As shown below, Fittingbox's Virtual Try-On software uses facial biometrics to allow a consumer to virtually "try-on" eyewear by using the various facial biometric data points it gathers through their computer or phone camera to be able to resize and virtually show a particular eyeglass style on the consumer's face.



24.     Maui Jim manufactures and sells several brands of luxury sunglasses, eyeglasses, and apparel. Maui Jim's products are available for purchase directly from the company through its website, mauijim.com.

25.     As shown below, in an effort to increase sales of its eyewear products, Maui Jim partnered with Fittingbox to integrate Fittingbox's Virtual Try-On software on its website.

FILED DATE: 10/4/2021 9:17 PM    2021CH05066



26.     As with other retailers who use Fittingbox's Virtual Try-On software to sell their eyewear products, Maui Jim utilized Fittingbox's biometric technology to scan the faces of its potential customers using the cameras on their phones or computers and superimpose their glasses on their faces.

27.     For example, Plaintiff visited Maui Jim's website www.mauijim.com on or about September 16, 2021 and used Defendants' Virtual Try-On software to see what several pairs of Maui Jim's sunglasses would look like on him.

28.     Plaintiff visited Maui Jim's website in Cook County, Illinois, where he resides.

29.     Defendants' Virtual Try-On software used the web camera on Plaintiff's computer to scan Plaintiff's face and create a detailed template of his unique facial geometry that Defendants used to determine where exactly to superimpose the various pairs of sunglasses on his face.

30.     Plaintiff relied on Defendants to not only provide lawful and legally compliant software for Plaintiff to use, but to also disclose all material information regarding the software,

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

including all relevant retention, destruction, and dissemination policies as they relate to the use of his biometrics.

31. After capturing Plaintiff's facial biometrics through Maui Jim's website utilizing Fittingbox's software, Defendants disseminated Plaintiff's and other Class and Subclass members' biometrics to third parties, including their technology vendors for data storage purposes.

32. Prior to taking Plaintiff's and the other Class and Subclass members' biometrics, Defendants did not inform Plaintiff and the other Class and Subclass members in writing that their biometrics were being collected, stored, used, otherwise obtained, or disseminated, or in any way received their informed written consent to collect, capture, use, or otherwise obtain such information.

33. Defendants have also failed to make publicly available any written policy as to their biometric retention and destruction schedule.

34. Maui Jim's website contains very specific disclosures which describe and explain the information Maui Jim collects as well as consumers' rights under the European Union General Data Protection Directive ("GDPR") and other applicable data protection legislation. The presence of this information indicates that Maui Jim was and is aware of the importance of compliance with various data privacy laws.

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

## PRIVACY AND SECURITY POLICY

Aloha! As part of our 'Ohana, we at Maui Jim, Inc., Maui Jim USA, Inc., and other affiliated companies (collectively, the "Company" or "Maui Jim") believe strongly in protecting your privacy. That's why we're committed to the Direct Marketing Association's "Privacy Promise to American Consumers" as well as to protecting information covered by European Data Protection Directive 95/46/EC, European Directive 2009/136/EC, their replacements (including European Union General Data Protection Regulation (GDPR)), and other applicable data protection legislation (collectively, the "Data Privacy Laws"). Therefore, we have agreed to:

1.  Provide customers with the notice of their ability to opt out of information rental, sale, or exchange with other marketers;

2.  Honor customers' requests not to share their information with other marketers; and

3.  Honor customers' requests not to receive mail, telephone, or other solicitations from the Company.

35.     At the bottom of its website, well below where any user would need to scroll to use its Virtual Try-On technology, Maui Jim also purports to create terms of use in which it seeks to bind itself and users of its website to the laws of the State of Illinois.

4.  **Governing Law.** This agreement and all rights and obligations of the parties shall be governed by and construed in accordance with the laws of the State of Illinois without regard to its conflicts of laws provisions.

36.     As with its specific acknowledgment of GDPR and its requirements, Maui Jim's specific references to Illinois laws indicates that it was and is aware of its duty to comply with those laws, including Illinois' BIPA law. As such, Maui Jim's violation of BIPA was reckless or willful, or at the very least negligent.

37.     Defendants not only captured Plaintiff and other consumers' biometrics through their websites and other online software, but also other personal identifying information, including their names and mailing addresses where a consumer placed an order, IP addresses, internet search

and browsing history, and other information that is easily used to identify the individual from whom such information is gleaned.

FILED DATE: 10/4/2021 9:17 PM    2021CH05066

## CLASS ALLEGATIONS

38.    Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent one Class and one Subclass defined as follows:

> **The Fittingbox Class:**
>
> All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Fittingbox within the state of Illinois any time within the applicable limitations period.
>
> **The Maui Jim Subclass:**
>
> All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Maui Jim within the state of Illinois any time within the applicable limitations period.

39.    Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

40.    Upon information and belief, there are at least thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and Subclass is currently unknown to Plaintiff, the members can be easily identified through Defendants' records.

41.    Plaintiff's claims are typical of the claims of the members of the Class and Subclass he seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries

to Plaintiff and to the Class and Subclass. As alleged herein, Plaintiff, the Class, and the Subclass have all suffered damages as a result of Defendants' BIPA violations.

42.     There are many questions of law and fact common to the claims of Plaintiff, the Class, and the Subclass and those questions predominate over any questions that may affect individual members. Common questions for the Class and Subclass include, but are not limited to, the following:

a.  Whether Defendants collect, capture, store, use, or disseminate the biometrics of the members of the Class and Subclass;

b.  Whether Defendants made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometrics;

c.  Whether Defendants obtained a written release from the members of the Class and Subclass before capturing, collecting, or otherwise obtaining their biometrics;

d.  Whether Defendants provided a written disclosure to the members of the Class and Subclass that explains the specific purposes, and the length of time, for which their biometrics were collected, stored, and used before collecting such biometrics;

e.  Whether Defendants' conduct violates BIPA;

f.  Whether Defendants' violations of BIPA are willful or reckless;

g.  Whether Defendants' violations of BIPA are negligent; and

h.  Whether Plaintiff and other Class and Subclass members are entitled to damages and injunctive relief.

43.     Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

FILED DATE: 10/4/2021 9:17 PM 2021CH05066

or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

44. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class or Subclass.

45. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

## COUNT I
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*,**

46. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47. Defendants are private entities under BIPA.

48. BIPA requires private entities, such as Defendants, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being captured, collected, stored, and used; and

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

(3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

49.     BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. An entity which possesses biometric identifiers or information must make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual).

50.     Plaintiff and the other Class and Subclass members have had their "biometric identifiers," namely their facial geometry and scans thereof, collected, captured, or otherwise obtained by Defendants.

51.     Plaintiff and the Class and Subclass members have been aggrieved by Defendants' failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

    a.   Defendants failed to inform Plaintiff and the Class and Subclass members in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

    b.   Defendants failed to inform Plaintiff and the Class and Subclass members in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

    c.   Defendants failed to inform Plaintiff and the Class and Subclass members in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

14

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

    d.   Defendants failed to obtain a written release from Plaintiff and the Class and Subclass members, as required by 740 ILCS 14/15(b)(3);

    e.   Defendants failed to make publicly available a written retention schedule detailing the specific length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and

    f.   Defendants failed to obtain informed consent to disclose or disseminate the Class and Subclass members' biometrics, as required by 740 ILCS 14/15(d)(1).

52.    Defendants profited from Plaintiff's and the other Class and Subclass members' biometric identifiers through using such information to sell luxury eyewear products in violation of 740 ILCS 14/15(c). Defendants knew, or were reckless in not knowing, that the Virtual Try-On biometric capture and collection software they used would be subject to BIPA and nevertheless wholly failed to comply with the statute.

53.    By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class and Subclass members' biometrics as described herein, Defendants denied Plaintiff and the Class and Subclass members their right to statutorily-required information, and violated their respective rights to biometric information privacy, as set forth in BIPA.

54.    BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

55.    Defendants' violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements, as BIPA has been in existence since 2008, and BIPA's minimally burdensome compliance regime may be satisfied with a single

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

sheet of paper or a single webpage screen. Alternatively, Defendants negligently failed to comply with BIPA's disclosure, consent, and policy posting requirements.

56.     Accordingly, Plaintiff, on behalf of himself and the proposed Class and Subclass, prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class and Subclass, respectfully requests that this Court enter an Order:

a.     Certifying the Class and Subclass as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b.     Declaring that Defendants' actions, as set forth herein, violate BIPA;

c.     Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class and Subclass by requiring Defendants to comply with BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and biometric information;

d.     Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e.     Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f.     Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

g.     Awarding pre- and post-judgment interest, as allowable by law; and

h.     Awarding such further and other relief as the Court deems just and equitable.

16

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.


Dated: October 4, 2021            Respectfully submitted,

                                  CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals

              By:    /s/ Timothy P. Kingsbury
                       *One of Plaintiff's Attorneys*


Eugene Y. Turin
David L. Gerbie
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
dgerbie@mcgpc.com
tkingsbury@mcgpc.com

*Attorneys for Plaintiff and the Putative Class and Subclass*

FILED DATE: 10/4/2021 9:17 PM   2021CH05066

FILED
10/7/2021 10:41 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15129192

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

CHRISTOPHER PECHO, individually   )
and on behalf of similarly situated    )
individuals,   )
    )
        )    No. 2021-CH-05066
   *Plaintiff*,   )
    )
    v.   )    Hon. Allen P. Walker
    )
FITTINGBOX INC., a Florida   )
Corporation; MAUI JIM, INC., an Illinois   )
Corporation; and MAUI JIM USA, Inc.,   )
an Illinois Corporation,   )
    )
   *Defendants*.   )

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY,
FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY**

Plaintiff Christopher Pecho, by and through his undersigned counsel, pursuant to 735 ILCS 5/2-801, moves for entry of an order certifying the Class proposed below, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g.*, *Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011). In support of his Motion, Plaintiff submits the following Memorandum of Law.

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

Dated: October 7, 2021

Respectfully Submitted,

CHRISTOPHER PECHO, individually and
on behalf of similarly situated individuals

By: /s/ Timothy P. Kingsbury
*One of Plaintiff's Attorneys*

Eugene Y. Turin
David L. Gerbie
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
dgerbie@mcgpc.com
tkingsbury@mcgpc.com

*Attorneys for Plaintiff and the Putative Class and Subclass*

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR
A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY**

This Court should certify a class and subclass of individuals whose biometrics were obtained by Fittingbox, Inc., Maui Jim, Inc., and Maui Jim USA, Inc. ("Defendants") in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Defendants use Fittingbox's Virtual Try-On software to increase online sales of eyewear products. However, unbeknownst to customers such as Plaintiff and the other members of the putative Class, Fittingbox's Virtual Try-On software extracts consumers' facial geometry biometrics in order to superimpose sunglasses, eyeglasses, and other similar accessories on their faces while they use the technology. In implementing this invasive technology, Defendants have violated BIPA because they failed to obtain proper consent prior to collecting and disseminating Plaintiff's and the other class members' facial geometry biometrics, failed to make publicly available any written biometric retention and destruction schedule, and profited directly from their biometric data. After Plaintiff learned of Defendants' wrongful conduct, he brought suit on behalf of a class of similarly situated individuals to put a stop to Defendants' collection of Illinois residents' facial geometry biometrics in violation of BIPA, and to obtain redress for all persons injured by their conduct.

## I.   INTRODUCTION: BIPA

The Illinois Biometric Information Protection Act is designed to protect individuals' biometrics. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296. Under BIPA, biometric identifiers include fingerprints, voiceprints, or scans of hand or face

FILED DATE: 10/7/2021 10:41 PM    2021CH05066

geometry; while biometric information can be defined as any information based on a biometric identifier, regardless of how it is converted or stored. (Complaint, "Compl.," ¶ 1)

In recognition of the importance of the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they: (1) inform that person in writing that biometric identifiers or information will be captured, collected, stored, or used; (2) inform that person in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being captured, collected, stored, and used; (3) receive a written release from the person for the collection of his or her biometric identifiers and/or information; and (4) publish publicly and make available a written retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15; Compl., ¶ 4. In addition, BIPA also prohibits private companies from selling, leasing, trading, or otherwise profiting from a person's or a customer's biometric identifier or biometric information. 740 ILCS 14/15(c); Compl., ¶ 6. And lastly BIPA prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of biometrics without consent, unless the "disclosure or redisclosure completes a financial transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d); Compl., ¶ 6.

## II.    FACTUAL BACKGROUND

### A.    The Underlying Misconduct.

Defendant Fittingbox is a provider of Virtual Try-On software and services to companies within Illinois and across the country that interact with Illinois residents daily. (Compl., ¶ 15.) Fittingbox's main product allows online shoppers to interact with a facial recognition and augmented reality system that superimposes images of eyewear on their face based on

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

measurements of their facial geometry. (Compl., ¶¶ 22–23.) Critically, Fittingbox's Virtual Try-On software functions by collecting and analyzing facial geometry biometrics to superimpose images of eyewear upon images of the consumer's face, and to gather analytics and information from the interaction with the consumer (*Id.* at ¶¶ 31, 37.)

One of Defendant's largest customers that utilizes its Virtual Try-On software is Maui Jim. (*Id.* at ¶ 20, 25.) Maui Jim, like numerous other Fittingbox customers, purchased access to Defendant's Virtual Try-On software to create an interactive shopping experience in which consumers are able to "try on" depictions of eyewear in real-time. (*Id.* at ¶ 24-26.) However, as with other customers utilizing Fittingbox's Virtual Try-On software, Maui Jim failed to implement a uniform policy to ensure that individuals are informed that their facial geometry scan biometrics are being collected, analyzed, and disseminated. (*Id.* at ¶ 32-33.)

Plaintiff interacted with Defendants' Virtual Try-On software in September, 2021 when he visited Maui Jim's website while shopping online for sunglasses. (*Id.* at ¶ 27.) During his visit to the website, Plaintiff's facial geometry scan biometrics were obtained and utilized by Defendants' Virtual Try-On software to create a detailed template of his unique facial geometry that Defendants then used to resize and virtually show various pairs of sunglasses on his face (*Id.*) However, as with thousands of other Illinois residents who interact with Defendants' Virtual Try-On software on a daily basis, Plaintiff did not at any time before or during his visit to Maui Jim's website give consent for Defendant to do obtain, disseminate, use, or collect his facial geometry biometrics. (*Id.* at ¶¶ 32.)

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

### B.  The Proposed Class and Subclass

Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class and Subclass defined as follows:

> **The Fittingbox Class**: All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Fittingbox within the state of Illinois any time within the applicable limitations period.
>
> **The Maui Jim Subclass:**
>
> All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Maui Jim within the state of Illinois any time within the applicable limitations period.

 (Compl., ¶ 38.) As explained below, the proposed Class satisfies each of the four requirements for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity, commonality, adequacy of representation, and fair and efficient adjudication. A class action is not just appropriate here, it is also the only way that the members of the putative Class and Subclass can obtain appropriate redress for Defendants' unlawful conduct.

## III.  ARGUMENT

### A.  Standards for Class Certification

To obtain class certification, it is not necessary for a plaintiff to establish that he will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and citation omitted)). As such, in determining whether to certify a proposed class, the Court should accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc*., 378 Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1)   The class is so numerous that joinder of all members is impracticable.
> (2)   There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
> (3)   The representative parties will fairly and adequately protect the interest of the class.
> (4)   The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class, and the Court should therefore certify the proposed Class.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not

yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

**B.     The Numerosity Requirement is Satisfied**

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are thousands of members of the Class. (Compl., ¶ 40.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Class can be easily and objectively determined from Defendants' records as their Virtual Try-On software and other web analytics software tracks all customer interactions and the IP addresses and other identifying characteristics from which they originate, as well as the accompanying customer records maintained by Defendants' customers.

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

Furthermore, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, because each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

### C.      Common Questions of Law and Fact Predominate

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984). These common questions include: whether Defendants collect, capture, or otherwise obtain biometrics from Illinois residents who interact with their Virtual Try-On software; whether Defendants disseminated facial geometry scan biometrics of Illinois residents; whether Defendants obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their facial geometry scan biometrics; whether Defendants' conduct violates BIPA; whether Defendants' BIPA violations are willful or reckless; and whether Plaintiff and the Class are entitled to damages and injunctive relief. (Compl., ¶ 42.)

As alleged, and as will be shown through obtainable evidence, during the relevant time period Defendants engaged in a common course of conduct by collecting, capturing, storing, disseminating and profiting from Class members' facial geometry biometrics without obtaining

the proper consent required by BIPA. Given that BIPA requires a record of consent to engage in such conduct, whether Defendants had valid consent is also a common issue subject to common resolution. Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this hurdle to certification.

### D. Adequate Representation

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class. Plaintiff has alleged that, like the other members of the Class, his facial geometry biometrics were obtained by Defendants through their Virtual Try-On software and without his consent. (Compl., ¶¶ 22–33.) Plaintiff's pursuit of this matter against Defendants demonstrates that he will be a zealous advocate for the Class. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in several complex consumer class actions. Accordingly, the proposed class representative and proposed class counsel will adequately protect the interests of the members of the Class, thus

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

satisfying Section 2-801(3).

### E.     Fair and Efficient Adjudication of the Controversy

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of…protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving data privacy violations and data breaches, which can involve significant injury to the those affected, but result in many small, individual claims. Here, absent a class action, most members of the Class would find the cost of litigating their statutorily-limited claims to be prohibitive, and multiple

11

FILED DATE: 10/7/2021 10:41 PM 2021CH05066

individual actions would be judicially inefficient. *Id.*

Certification of the proposed Class is necessary to ensure that Defendants' conduct becomes compliant with BIPA, to ensure that the Class members' privacy rights in their biometrics are sufficiently protected, and to compensate those individuals who have had their statutorily-protected privacy rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress, or that Defendant would willingly implement the procedures necessary to comply with the statute. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

## IV.    **CONCLUSION**

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class, appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: October 7, 2021                                     Respectfully submitted,

                                                          CHRISTOPHER PECHO, individually and
                                                          on behalf of similarly situated individuals

                                                          By: /s/ Timothy P. Kingsbury
                                                          *One of Plaintiff's Attorneys*

Eugene Y. Turin
David L. Gerbie
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
dgerbie@mcgpc.com
tkingsbury@mcgpc.com
*Attorneys for Plaintiff and the Putative Class and Subclass*

FILED DATE: 10/7/2021 10:41 PM   2021CH05066

## **<u>CERTIFICATE OF FILING</u>**

I hereby certify that on October 7, 2021, I caused the foregoing *Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* to be electronically filed with the Clerk of the Circuit Court of Cook County using the CM/ECF system.

/s/ Timothy P. Kingsbury

Case: 1:21-cv-06202 Document #: 1-1 Filed: 11/19/21 Page 32 of 90 PageID #:38

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
10/8/2021 9:12 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15131013

|  |  |  |
|---|---|---|
| CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 2021-CH-05066 |
| v. | ) ) ) | Hon. Allen P. Walker |
| FITTINGBOX INC., a Florida Corporation; MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, Inc., an Illinois Corporation, | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**PLAINTIFF'S MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT**

Plaintiff Christopher Pecho ("Plaintiff"), by and through his undersigned counsel, hereby moves pursuant to 735 ILCS 5/2-616 for entry of an Order granting him leave to file a First Amended Class Action Complaint in this matter. In support of his Motion, Plaintiff states as follows:

1.       On October 4, 2021, Plaintiff filed his Class Action Complaint ("Complaint") against Defendants Fittingbox Inc. ("Fittingbox"), Maui Jim, Inc., and Maui Jim USA, Inc. (collectively, "Defendants"), asserting claims against Defendants for under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Within the caption and in paragraph 15 of the Complaint, Plaintiff identified Fittingbox as a corporation incorporated in Florida.

2.       To date, no Defendant has been served with a summons or Plaintiff's Complaint.

3.       Since the filing of his initial Complaint, Plaintiff's counsel has discovered that Fittingbox is not incorporated in Florida, but rather is incorporated in Delaware.

1

FILED DATE: 10/8/2021 9:12 AM  2021CH05066

4.    Accordingly, prior to effectuating service, Plaintiff seeks leave to file his proposed First Amended Class Action Complaint, a copy of which is attached hereto as <u>Exhibit A</u>, in order to correctly identify Fittingbox as a Delaware corporation.

5.    Section 5/2-616 of the Illinois Code of Civil Procedure states in relevant part that:

> (a) At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought . . . .

*        *        *

> (c) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just.

735 ILCS 5/2-616(a), (c).

6.    Courts have held that Section 5/2-616 should be liberally construed, so as to permit the resolution of cases on the merits, with any doubts resolved in favor of allowing amendments. *See, e.g., Selcke v. Bove*, 258 Ill. App. 3d 932, 937 (1st Dist. 1994).

7.    Further, courts should freely exercise their power to allow amendments so that a party may fully present its cause of action. *Trident Indus. Prods. Corp. v. Am. Nat'l Bank & Trust Co., N.A.*, 149 Ill. App. 3d 857, 866 (1st Dist. 1985).

8.    Among the factors to be considered in determining whether to permit an amendment to the pleadings are the timeliness of the proposed amendment and whether there were previous opportunities to amend; whether the other party would be prejudiced or surprised by the proposed amendment; and whether the amendment would cure a pleading defect. *Lee v. Chicago Transit Auth.*, 152 Ill. 2d 432, 467–68, 605 N.E.2d 493, 508 (1992); *see also Loyola Academy v.*

2

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

*S & S Roof Maintenance* (1992), 146 Ill.2d 263, 273, 166 Ill.Dec. 882, 586 N.E.2d 1211 (citing *Kupianen v. Graham* (1982), 107 Ill.App.3d 373, 377, 63 Ill.Dec. 125, 437 N.E.2d 774).

9.      All the relevant factors for amendment are satisfied in this case. Allowing Plaintiff to file his proposed First Amended Class Action Complaint will not cause undue delay, as this case is still very early procedurally. No Defendant has been served with Plaintiff's initial Complaint, there is currently no responsive pleading on file, and no amendment, discovery, or trial deadlines have been set.

10.      Plaintiff seeks leave to cure a defect in his initial Complaint before effectuating service on any Defendant in order to avoid potential unnecessary motion practice.

11.      Plaintiff brings this Motion in good faith and not for purposes of delay.

WHEREFORE, Plaintiff Christopher Pecho respectfully requests that this Court enter an Order (i) granting Plaintiff leave to file his proposed First Amended Class Action Complaint within seven (7) days of entry of such Order; and (ii) granting such other or further relief as the Court deems just and reasonable.

Dated: October 7, 2021

Respectfully Submitted,

CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals

By:      /s/ Timothy P. Kingsbury
         *One of Plaintiff's Attorneys*

Eugene Y. Turin
David L. Gerbie
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
(312) 893-7002
eturin@mcgpc.com
dgerbie@mcgpc.com
tkingsbury@mcgpc.com
*Attorneys for Plaintiff and the Putative Class*

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

## **CERTIFICATE OF FILING**

I hereby certify that on October 7, 2021, I caused the foregoing *Plaintiff's Motion for Leave to File First Amended Complaint* to be electronically filed with the Clerk of the Circuit Court of Cook County using the CM/ECF system.

/s/ Timothy P. Kingsbury

4

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

# EXHIBIT A

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals, | ) ) ) | |
| | ) | No. 2021-CH-05066 |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Hon.  Allen P. Walker |
| FITTINGBOX INC., a Delaware Corporation; MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, Inc., an Illinois Corporation, | ) ) ) ) ) | |
| *Defendants.* | ) ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff Christopher Pecho ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this First Amended Class Action Complaint against Defendants Fittingbox, Inc. ("Fittingbox"), and Maui Jim, Inc. and Maui Jim USA, Inc. (together "Maui Jim"), for their violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for persons injured by Defendants' conduct. Plaintiff alleges the following based on personal knowledge as to his own experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

### INTRODUCTION

1.     BIPA defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

2.     This case concerns the misuse of individuals' biometrics in the form of scans of their facial geometry by Defendant Fittingbox, a provider of biometrically-enabled augmented reality "Virtual Try-On" software, and Defendant Maui Jim, an eyewear retailer that utilized Fittingbox's technology to market and sell its eyewear products. Through Defendants' utilization of Fittingbox's Virtual Try-On software, Defendants have captured, collected, disseminated, and/or otherwise used the biometrics of Plaintiff and other consumers throughout Illinois, without their informed written consent as required by law.

3.     Facial geometry is a unique and permanent biometric identifier associated with each individual. The unauthorized handling of such sensitive information exposes consumers to serious and irreversible privacy risks. If for example, a database containing scans of face geometry or other sensitive biometric data is hacked, breached, or otherwise exposed, consumers cannot simply change their biometric identifiers like they could reset a password or cancel a credit card.

4.     Having recognized that biometrics present unique security concerns, the Illinois Legislature enacted BIPA to regulate companies that collect and store Illinois citizens' biometrics. BIPA provides, *inter alia*, that private entities, such as Defendants, may not collect, capture, purchase, receive through trade or otherwise obtain an individual's biometrics unless they first:

> (1) inform the person whose biometrics are to be collected *in writing*
>
>     that biometric identifiers or biometric information will be collected
>
>     or stored, 740 ILCS 14/15(b)(1);
>
> (2) inform the person whose biometrics are to be collected *in writing* of
>
>     the specific purpose and the length of term for which such biometric
>
>     identifiers or biometric information is being collected, stored, and
>
>     used, 740 ILCS 14/15(b)(2); and

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

(3) receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information, 740 ILCS 14/15(b)(3).

5.     BIPA also requires a private entity in possession of biometric identifiers or biometric information  to make publicly-available a written policy outlining its storage and destruction policies for such biometric identifiers, and/or any biometric information derived from such identifiers. 750 ILCS 14/15(a).

6.     Finally, private entities are prohibited from profiting from an individual's biometric identifiers or biometric information, and from disclosing or disseminating the same to third parties without informed consent. 740 ILCS 14/15(c)–(d).

7.     The deprivation of the statutory rights conferred by BIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

8.     In direct violation of each of the foregoing provisions, Defendants are actively capturing, collecting, storing, and otherwise obtaining—without providing notice, obtaining informed written consent, or publishing data retention policies—the biometrics of thousands of individuals throughout Illinois who use Fittingbox's Virtual Try-On software.

9.     Specifically, Defendants have created, captured, collected, used, and stored thousands of templates of facial geometry—highly detailed geometric maps of the face—from thousands of Illinois individuals including Illinois residents like Plaintiff. Defendants create these templates of facial geometry using sophisticated facial recognition technology that scans, extracts, and analyzes data from the points and contours of faces that appear in photos and videos taken on mobile devices and computers and uses such scans of facial geometry to increase sales of luxury eyewear and other accessories. Each template of facial geometry that Defendants extract from

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

consumers is unique to that individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

10.    Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper, or its electronic equivalent. BIPA's requirements bestow a right to privacy in biometrics and a right to make an informed decision when electing whether to provide or withhold biometrics.

11.    Defendants collect the facial geometry of their clients' customers in Illinois without first obtaining those individuals' informed written consent and informing them how long they intend to keep such biometric data, as required by BIPA.

12.    Defendants also store those individuals' biometric data but have failed to publish a written policy specifying how long they retain such data and when they will destroy it, as required by BIPA.

13.    Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendants in capturing, collecting, storing, using, and disclosing his biometrics, and those of hundreds of other consumers throughout the state of Illinois, without their informed written consent, and without making  publicly available  a written policy detailing how they store and dispose of this irreplaceable information, in direct violation of BIPA.

14.    On behalf of himself and the proposed Class and Subclass defined below, Plaintiff seeks an injunction requiring Defendants to comply with BIPA, as well as an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

### PARTIES

15.    Defendant Fittingbox, Inc. is a Delaware corporation that conducts substantial business in and markets its services throughout Illinois, including in Cook County.

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

16.     Defendants Maui Jim, Inc. and Maui Jim USA, Inc, are Illinois corporations that conduct substantial business throughout Illinois, including in Cook County. Maui Jim's headquarters are located at One Aloha Lane, Peoria, IL 61615.

17.     At all relevant times, Plaintiff Christopher Pecho has been a resident and citizen of the State of Illinois, specifically Cook County.

**JURISDICTION AND VENUE**

18.     This Court may assert personal jurisdiction over Maui Jim pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Maui Jim, Inc. and Maui Jim USA, Inc. are corporations organized under the laws of this State, are doing business within this State, and because Plaintiff's claims arise out of Maui Jim's unlawful in-state actions, as Maui Jim captured, collected, stored, and used Plaintiff's biometric identifiers and/or biometric information in this State.

19.     This Court may assert personal jurisdiction over Fittingbox in accordance with the Illinois Constitution and the Constitution of the United States because Fittingbox advertises, solicits, and conducts substantial business within Illinois. At the very least, Fittingbox conducts substantial business within Illinois through its business relationship with Maui Jim, a company headquartered in Illinois and with its principal place of business in Illinois.

20.     This court may also assert personal jurisdiction over Fittingbox because Fittingbox transacts business within Illinois and has gathered the facial biometrics of individuals within Illinois, including Plaintiff's facial biometrics. In addition, Fittingbox prominently advertises its business relationship with Maui Jim, an Illinois-based company, on the homepage of its website in its marketing efforts to prospective clients, including Illinois based customers.

5

FILED DATE: 10/8/2021 9:12 AM   2021CH05066



*A list of Fittingbox customers as displayed on the fittingbox.com homepage*

21.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because both Maui Jim and Fittingbox are doing business in Cook County and thus reside there under § 2-102, and because the biometric transactions out of which this cause of action arises occurred in Cook County.

<b>FACTS SPECIFIC TO PLAINTIFF</b>

22.     As shown below, Defendant Fittingbox has developed a biometric capture and analysis software that is able to create a biometric face scan of an individual.



FILED DATE: 10/8/2021 9:12 AM   2021CH05066

23.     Fittingbox utilizes its facial biometric software to power its "Virtual Try-On" service that it markets to eyewear companies. As shown below, Fittingbox's Virtual Try-On software uses facial biometrics to allow a consumer to virtually "try-on" eyewear by using the various facial biometric data points it gathers through their computer or phone camera to be able to resize and virtually show a particular eyeglass style on the consumer's face.



24.     Maui Jim manufactures and sells several brands of luxury sunglasses, eyeglasses, and apparel. Maui Jim's products are available for purchase directly from the company through its website, mauijim.com.

25.     As shown below, in an effort to increase sales of its eyewear products, Maui Jim partnered with Fittingbox to integrate Fittingbox's Virtual Try-On software on its website.

FILED DATE: 10/8/2021 9:12 AM   2021CH05066



26.     As with other retailers who use Fittingbox's Virtual Try-On software to sell their eyewear products, Maui Jim utilized Fittingbox's biometric technology to scan the faces of its potential customers using the cameras on their phones or computers and superimpose their glasses on their faces.

27.     For example, Plaintiff visited Maui Jim's website www.mauijim.com on or about September 16, 2021 and used Defendants' Virtual Try-On software to see what several pairs of Maui Jim's sunglasses would look like on him.

28.     Plaintiff visited Maui Jim's website in Cook County, Illinois, where he resides.

29.     Defendants' Virtual Try-On software used the web camera on Plaintiff's computer to scan Plaintiff's face and create a detailed template of his unique facial geometry that Defendants used to determine where exactly to superimpose the various pairs of sunglasses on his face.

30.     Plaintiff relied on Defendants to not only provide lawful and legally compliant software for Plaintiff to use, but to also disclose all material information regarding the software,

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

including all relevant retention, destruction, and dissemination policies as they relate to the use of his biometrics.

31.     After capturing Plaintiff's facial biometrics through Maui Jim's website utilizing Fittingbox's software, Defendants disseminated Plaintiff's and other Class and Subclass members' biometrics to third parties, including their technology vendors for data storage purposes.

32.     Prior to taking Plaintiff's and the other Class and Subclass members' biometrics, Defendants did not inform Plaintiff and the other Class and Subclass members in writing that their biometrics were being collected, stored, used, otherwise obtained, or disseminated, or in any way received their informed written consent to collect, capture, use, or otherwise obtain such information.

33.     Defendants have also failed to make publicly available any written policy as to their biometric retention and destruction schedule.

34.     Maui Jim's website contains very specific disclosures which describe and explain the information Maui Jim collects as well as consumers' rights under the European Union General Data Protection Directive ("GDPR") and other applicable data protection legislation. The presence of this information indicates that Maui Jim was and is aware of the importance of compliance with various data privacy laws.

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

## PRIVACY AND SECURITY POLICY

Aloha! As part of our 'Ohana, we at Maui Jim, Inc., Maui Jim USA, Inc., and other affiliated companies (collectively, the "Company" or "Maui Jim") believe strongly in protecting your privacy. That's why we're committed to the Direct Marketing Association's "Privacy Promise to American Consumers" as well as to protecting information covered by European Data Protection Directive 95/46/EC, European Directive 2009/136/EC, their replacements (including European Union General Data Protection Regulation (GDPR)), and other applicable data protection legislation (collectively, the "Data Privacy Laws"). Therefore, we have agreed to:

1. Provide customers with the notice of their ability to opt out of information rental, sale, or exchange with other marketers;

2. Honor customers' requests not to share their information with other marketers; and

3. Honor customers' requests not to receive mail, telephone, or other solicitations from the Company.

35.     At the bottom of its website, well below where any user would need to scroll to use its Virtual Try-On technology, Maui Jim also purports to create terms of use in which it seeks to bind itself and users of its website to the laws of the State of Illinois.

4. **Governing Law.** This agreement and all rights and obligations of the parties shall be governed by and construed in accordance with the laws of the State of Illinois without regard to its conflicts of laws provisions.

36.     As with its specific acknowledgment of GDPR and its requirements, Maui Jim's specific references to Illinois laws indicates that it was and is aware of its duty to comply with those laws, including Illinois' BIPA law. As such, Maui Jim's violation of BIPA was reckless or willful, or at the very least negligent.

37.     Defendants not only captured Plaintiff and other consumers' biometrics through their websites and other online software, but also other personal identifying information, including their names and mailing addresses where a consumer placed an order, IP addresses, internet search

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

and browsing history, and other information that is easily used to identify the individual from whom such information is gleaned.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent one Class and one Subclass defined as follows:

**The Fittingbox Class:**

All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Fittingbox within the state of Illinois any time within the applicable limitations period.

**The Maui Jim Subclass:**

All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Maui Jim within the state of Illinois any time within the applicable limitations period.

39.     Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

40.     Upon information and belief, there are at least thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and Subclass is currently unknown to Plaintiff, the members can be easily identified through Defendants' records.

41.     Plaintiff's claims are typical of the claims of the members of the Class and Subclass he seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries

to Plaintiff and to the Class and Subclass. As alleged herein, Plaintiff, the Class, and the Subclass have all suffered damages as a result of Defendants' BIPA violations.

42.     There are many questions of law and fact common to the claims of Plaintiff, the Class, and the Subclass and those questions predominate over any questions that may affect individual members. Common questions for the Class and Subclass include, but are not limited to, the following:

a.  Whether Defendants collect, capture, store, use, or disseminate the biometrics of the members of the Class and Subclass;

b.  Whether Defendants made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometrics;

c.  Whether Defendants obtained a written release from the members of the Class and Subclass before capturing, collecting, or otherwise obtaining their biometrics;

d.  Whether Defendants provided a written disclosure to the members of the Class and Subclass that explains the specific purposes, and the length of time, for which their biometrics were collected, stored, and used before collecting such biometrics;

e.  Whether Defendants' conduct violates BIPA;

f.  Whether Defendants' violations of BIPA are willful or reckless;

g.  Whether Defendants' violations of BIPA are negligent; and

h.  Whether Plaintiff and other Class and Subclass members are entitled to damages and injunctive relief.

43.     Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

FILED DATE: 10/8/2021 9:12 AM 2021CH05066

or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

44.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class or Subclass.

45.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

<u>**COUNT I**</u>
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.,**

46.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47.     Defendants are private entities under BIPA.

48.     BIPA requires private entities, such as Defendants, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being captured, collected, stored, and used; and

13

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

(3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

49.    BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. An entity which possesses biometric identifiers or information must make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual).

50.    Plaintiff and the other Class and Subclass members have had their "biometric identifiers," namely their facial geometry and scans thereof, collected, captured, or otherwise obtained by Defendants.

51.    Plaintiff and the Class and Subclass members have been aggrieved by Defendants' failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

a.    Defendants failed to inform Plaintiff and the Class and Subclass members in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

b.    Defendants failed to inform Plaintiff and the Class and Subclass members in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

c.    Defendants failed to inform Plaintiff and the Class and Subclass members in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

14

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

    d.   Defendants failed to obtain a written release from Plaintiff and the Class and Subclass members, as required by 740 ILCS 14/15(b)(3);

    e.   Defendants failed to make publicly available a written retention schedule detailing the specific length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and

    f.   Defendants failed to obtain informed consent to disclose or disseminate the Class and Subclass members' biometrics, as required by 740 ILCS 14/15(d)(1).

52.    Defendants profited from Plaintiff's and the other Class and Subclass members' biometric identifiers through using such information to sell luxury eyewear products in violation of 740 ILCS 14/15(c). Defendants knew, or were reckless in not knowing, that the Virtual Try-On biometric capture and collection software they used would be subject to BIPA and nevertheless wholly failed to comply with the statute.

53.    By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class and Subclass members' biometrics as described herein, Defendants denied Plaintiff and the Class and Subclass members their right to statutorily-required information, and violated their respective rights to biometric information privacy, as set forth in BIPA.

54.    BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

55.    Defendants' violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements, as BIPA has been in existence since 2008, and BIPA's minimally burdensome compliance regime may be satisfied with a single

FILED DATE: 10/8/2021 9:12 AM   2021CH05066

sheet of paper or a single webpage screen. Alternatively, Defendants negligently failed to comply with BIPA's disclosure, consent, and policy posting requirements.

56.     Accordingly, Plaintiff, on behalf of himself and the proposed Class and Subclass, prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class and Subclass, respectfully requests that this Court enter an Order:

a.     Certifying the Class and Subclass as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b.     Declaring that Defendants' actions, as set forth herein, violate BIPA;

c.     Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class and Subclass by requiring Defendants to comply with BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and biometric information;

d.     Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e.     Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f.     Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

g.     Awarding pre- and post-judgment interest, as allowable by law; and

h.     Awarding such further and other relief as the Court deems just and equitable.

FILED DATE: 10/8/2021 9:12 AM    2021CH05066

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: October _, 2021                  Respectfully Submitted,

                                         CHRISTOPHER PECHO, individually and on
                                         behalf of similarly situated individuals

                            By:    /s/ Timothy P. Kingsbury
                                   *One of Plaintiff's Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
David Gerbie
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
dgerbie@mcgpc.com

*Attorneys for Plaintiff and the Putative Class and Subclass*

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

**Summons - Alias Summons** (06/28/18) CCG 0001

FILED
10/12/2021 3:47 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15173062

FILED DATE: 10/12/2021 3:47 PM 2021CH05066

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHRISTOPHER PECHO

(Name all parties)

v.

FITTINGBOX, INC., a Delaware Corporation;

MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, INC., an Illinois Corporation

Case No. 2021-CH-05066

**MAUI JIM, INC., c/o Paul J. Lippens**
**One Aloha Lane**
**Peoria, IL 61615**

☑ **SUMMONS** ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

Witness: _____10/12/2021 3:47 PM IRIS Y. MARTINEZ_____

Atty. No.: 56618

Atty Name: Timothy P. Kingsbury

Atty. for: Plaintiff

Address: 55 West Wacker Drive, 9th Fl.

City: Chicago                    State: IL

Zip: 60601

Telephone: 312-893-7002

Primary Email: tkingsbury@mcgpc.com

Secondary Email: eturin@mcgpc.com

Tertiary Email: dgerbie@mcgpc.com

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

**CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS**

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

⦿ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

FILED DATE: 10/12/2021 3:47 PM  2021CH05066

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**   cookcountyclerkofcourt.org

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

| | |
|---|---|
| **2120 - Served** | **2121 - Served** |
| **2220 - Not Served** | **2221 - Not Served** |
| **2320 - Served By Mail** | **2321 - Served By Mail** |
| **2420 - Served By Publication** | **2421 - Served By Publication** |

**Summons - Alias Summons** (06/28/18) CCG 0001

FILED
10/12/2021 3:47 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15173062

FILED DATE: 10/12/2021 3:47 PM 2021CH05066

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHRISTOPHER PECHO

_____
(Name all parties)

v.

FITTINGBOX, INC., a Delaware Corporation;

MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, INC., an Illinois Corporation

Case No. 2021-CH-05066

**MAUI JIM USA, INC., c/o Paul J. Lippens**
**One Aloha Lane**
**Peoria, IL 61615**

☑ **SUMMONS** ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

Witness: 10/12/2021 3:47 PM IRIS Y. MARTINEZ

Atty. No.: 56618

Atty Name: Timothy P. Kingsbury

Atty. for: Plaintiff

Address: 55 West Wacker Drive, 9th Fl.

City: Chicago        State: IL

Zip: 60601

Telephone: 312-893-7002

Primary Email: tkingsbury@mcgpc.com

Secondary Email: eturin@mcgpc.com

Tertiary Email: dgerbie@mcgpc.com

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 10/12/2021 3:47 PM   2021CH05066

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
10/18/2021 2:30 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15243396

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 2021-CH-05066 |
| v. | ) ) | Hon. Allen P. Walker |
| FITTINGBOX INC., a Delaware Corporation; MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, Inc., an Illinois Corporation | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff Christopher Pecho ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this First Amended Class Action Complaint against Defendants Fittingbox Inc. ("Fittingbox"), and Maui Jim, Inc. and Maui Jim USA, Inc. (together "Maui Jim"), for their violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and to obtain redress for persons injured by Defendants' conduct. Plaintiff alleges the following based on personal knowledge as to his own experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

### INTRODUCTION

1.      BIPA defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

2.     This case concerns the misuse of individuals' biometrics in the form of scans of their facial geometry by Defendant Fittingbox, a provider of biometrically-enabled augmented reality "Virtual Try-On" software, and Defendant Maui Jim, an eyewear retailer that utilized Fittingbox's technology to market and sell its eyewear products. Through Defendants' utilization of Fittingbox's Virtual Try-On software, Defendants have captured, collected, disseminated, and/or otherwise used the biometrics of Plaintiff and other consumers throughout Illinois, without their informed written consent as required by law.

3.     Facial geometry is a unique and permanent biometric identifier associated with each individual. The unauthorized handling of such sensitive information exposes consumers to serious and irreversible privacy risks. If for example, a database containing scans of face geometry or other sensitive biometric data is hacked, breached, or otherwise exposed, consumers cannot simply change their biometric identifiers like they could reset a password or cancel a credit card.

4.     Having recognized that biometrics present unique security concerns, the Illinois Legislature enacted BIPA to regulate companies that collect and store Illinois citizens' biometrics. BIPA provides, *inter alia*, that private entities, such as Defendants, may not collect, capture, purchase, receive through trade or otherwise obtain an individual's biometrics unless they first:

> (1) inform the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored, 740 ILCS 14/15(b)(1);
>
> (2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored, and used, 740 ILCS 14/15(b)(2); and

2

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

(3) receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information, 740 ILCS 14/15(b)(3).

5.      BIPA also requires a private entity in possession of biometric identifiers or biometric information to make publicly-available a written policy outlining its storage and destruction policies for such biometric identifiers, and/or any biometric information derived from such identifiers. 750 ILCS 14/15(a).

6.      Finally, private entities are prohibited from profiting from an individual's biometric identifiers or biometric information, and from disclosing or disseminating the same to third parties without informed consent. 740 ILCS 14/15(c)–(d).

7.      The deprivation of the statutory rights conferred by BIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

8.      In direct violation of each of the foregoing provisions, Defendants are actively capturing, collecting, storing, and otherwise obtaining—without providing notice, obtaining informed written consent, or publishing data retention policies—the biometrics of thousands of individuals throughout Illinois who use Fittingbox's Virtual Try-On software.

9.      Specifically, Defendants have created, captured, collected, used, and stored thousands of templates of facial geometry—highly detailed geometric maps of the face—from thousands of Illinois individuals including Illinois residents like Plaintiff. Defendants create these templates of facial geometry using sophisticated facial recognition technology that scans, extracts, and analyzes data from the points and contours of faces that appear in photos and videos taken on mobile devices and computers and uses such scans of facial geometry to increase sales of luxury eyewear and other accessories. Each template of facial geometry that Defendants extract from

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

consumers is unique to that individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

10.     Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper, or its electronic equivalent. BIPA's requirements bestow a right to privacy in biometrics and a right to make an informed decision when electing whether to provide or withhold biometrics.

11.     Defendants collect the facial geometry of their clients' customers in Illinois without first obtaining those individuals' informed written consent and informing them how long they intend to keep such biometric data, as required by BIPA.

12.     Defendants also store those individuals' biometric data but have failed to publish a written policy specifying how long they retain such data and when they will destroy it, as required by BIPA.

13.     Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendants in capturing, collecting, storing, using, and disclosing his biometrics, and those of hundreds of other consumers throughout the state of Illinois, without their informed written consent, and without making publicly available a written policy detailing how they store and dispose of this irreplaceable information, in direct violation of BIPA.

14.     On behalf of himself and the proposed Class and Subclass defined below, Plaintiff seeks an injunction requiring Defendants to comply with BIPA, as well as an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

15.     Defendant Fittingbox Inc. is a Delaware corporation that conducts substantial business in and markets its services throughout Illinois, including in Cook County.

4

FILED DATE: 10/18/2021 2:30 PM    2021CH05066

16.     Defendants Maui Jim, Inc. and Maui Jim USA, Inc, are Illinois corporations that conduct substantial business throughout Illinois, including in Cook County. Maui Jim's headquarters are located at One Aloha Lane, Peoria, IL 61615.

17.     At all relevant times, Plaintiff Christopher Pecho has been a resident and citizen of the State of Illinois, specifically Cook County.

**JURISDICTION AND VENUE**

18.     This Court may assert personal jurisdiction over Maui Jim pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Maui Jim, Inc. and Maui Jim USA, Inc. are corporations organized under the laws of this State, are doing business within this State, and because Plaintiff's claims arise out of Maui Jim's unlawful in-state actions, as Maui Jim captured, collected, stored, and used Plaintiff's biometric identifiers and/or biometric information in this State.

19.     This Court may assert personal jurisdiction over Fittingbox in accordance with the Illinois Constitution and the Constitution of the United States because Fittingbox advertises, solicits, and conducts substantial business within Illinois. At the very least, Fittingbox conducts substantial business within Illinois through its business relationship with Maui Jim, a company headquartered in Illinois and with its principal place of business in Illinois.

20.     This court may also assert personal jurisdiction over Fittingbox because Fittingbox transacts business within Illinois and has gathered the facial biometrics of individuals within Illinois, including Plaintiff's facial biometrics. In addition, Fittingbox prominently advertises its business relationship with Maui Jim, an Illinois-based company, on the homepage of its website in its marketing efforts to prospective clients, including Illinois based customers.

FILED DATE: 10/18/2021 2:30 PM   2021CH05066



*A list of Fittingbox customers as displayed on the fittingbox.com homepage*

21.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because both Maui Jim and Fittingbox are doing business in Cook County and thus reside there under § 2-102, and because the biometric transactions out of which this cause of action arises occurred in Cook County.

**FACTS SPECIFIC TO PLAINTIFF**

22.     As shown below, Defendant Fittingbox has developed a biometric capture and analysis software that is able to create a biometric face scan of an individual.



FILED DATE: 10/18/2021 2:30 PM    2021CH05066

23.    Fittingbox utilizes its facial biometric software to power its "Virtual Try-On" service that it markets to eyewear companies. As shown below, Fittingbox's Virtual Try-On software uses facial biometrics to allow a consumer to virtually "try-on" eyewear by using the various facial biometric data points it gathers through their computer or phone camera to be able to resize and virtually show a particular eyeglass style on the consumer's face.



24.    Maui Jim manufactures and sells several brands of luxury sunglasses, eyeglasses, and apparel. Maui Jim's products are available for purchase directly from the company through its website, mauijim.com.

25.    As shown below, in an effort to increase sales of its eyewear products, Maui Jim partnered with Fittingbox to integrate Fittingbox's Virtual Try-On software on its website.

FILED DATE: 10/18/2021 2:30 PM    2021CH05066



26.     As with other retailers who use Fittingbox's Virtual Try-On software to sell their eyewear products, Maui Jim utilized Fittingbox's biometric technology to scan the faces of its potential customers using the cameras on their phones or computers and superimpose their glasses on their faces.

27.     For example, Plaintiff visited Maui Jim's website www.mauijim.com on or about September 16, 2021 and used Defendants' Virtual Try-On software to see what several pairs of Maui Jim's sunglasses would look like on him.

28.     Plaintiff visited Maui Jim's website in Cook County, Illinois, where he resides.

29.     Defendants' Virtual Try-On software used the web camera on Plaintiff's computer to scan Plaintiff's face and create a detailed template of his unique facial geometry that Defendants used to determine where exactly to superimpose the various pairs of sunglasses on his face.

30.     Plaintiff relied on Defendants to not only provide lawful and legally compliant software for Plaintiff to use, but to also disclose all material information regarding the software,

FILED DATE: 10/18/2021 2:30 PM    2021CH05066

including all relevant retention, destruction, and dissemination policies as they relate to the use of his biometrics.

31.     After capturing Plaintiff's facial biometrics through Maui Jim's website utilizing Fittingbox's software, Defendants disseminated Plaintiff's and other Class and Subclass members' biometrics to third parties, including their technology vendors for data storage purposes.

32.     Prior to taking Plaintiff's and the other Class and Subclass members' biometrics, Defendants did not inform Plaintiff and the other Class and Subclass members in writing that their biometrics were being collected, stored, used, otherwise obtained, or disseminated, or in any way received their informed written consent to collect, capture, use, or otherwise obtain such information.

33.     Defendants have also failed to make publicly available any written policy as to their biometric retention and destruction schedule.

34.     Maui Jim's website contains very specific disclosures which describe and explain the information Maui Jim collects as well as consumers' rights under the European Union General Data Protection Directive ("GDPR") and other applicable data protection legislation. The presence of this information indicates that Maui Jim was and is aware of the importance of compliance with various data privacy laws.

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

## PRIVACY AND SECURITY POLICY

Aloha! As part of our 'Ohana, we at Maui Jim, Inc., Maui Jim USA, Inc., and other affiliated companies (collectively, the "Company" or "Maui Jim") believe strongly in protecting your privacy. That's why we're committed to the Direct Marketing Association's "Privacy Promise to American Consumers" as well as to protecting information covered by European Data Protection Directive 95/46/EC, European Directive 2009/136/EC, their replacements (including European Union General Data Protection Regulation (GDPR)), and other applicable data protection legislation (collectively, the "Data Privacy Laws"). Therefore, we have agreed to:

1.  Provide customers with the notice of their ability to opt out of information rental, sale, or exchange with other marketers;

2.  Honor customers' requests not to share their information with other marketers; and

3.  Honor customers' requests not to receive mail, telephone, or other solicitations from the Company.

35.     At the bottom of its website, well below where any user would need to scroll to use its Virtual Try-On technology, Maui Jim also purports to create terms of use in which it seeks to bind itself and users of its website to the laws of the State of Illinois.

4.  **Governing Law.** This agreement and all rights and obligations of the parties shall be governed by and construed in accordance with the laws of the State of Illinois without regard to its conflicts of laws provisions.

36.     As with its specific acknowledgment of GDPR and its requirements, Maui Jim's specific references to Illinois laws indicates that it was and is aware of its duty to comply with those laws, including Illinois' BIPA law. As such, Maui Jim's violation of BIPA was reckless or willful, or at the very least negligent.

37.     Defendants not only captured Plaintiff and other consumers' biometrics through their websites and other online software, but also other personal identifying information, including their names and mailing addresses where a consumer placed an order, IP addresses, internet search

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

and browsing history, and other information that is easily used to identify the individual from whom such information is gleaned.

## CLASS ALLEGATIONS

38.    Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent one Class and one Subclass defined as follows:

> **The Fittingbox Class:**
>
> All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Fittingbox within the state of Illinois any time within the applicable limitations period.
>
> **The Maui Jim Subclass:**
>
> All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Maui Jim within the state of Illinois any time within the applicable limitations period.

39.    Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

40.    Upon information and belief, there are at least thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and Subclass is currently unknown to Plaintiff, the members can be easily identified through Defendants' records.

41.    Plaintiff's claims are typical of the claims of the members of the Class and Subclass he seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

to Plaintiff and to the Class and Subclass. As alleged herein, Plaintiff, the Class, and the Subclass have all suffered damages as a result of Defendants' BIPA violations.

42.     There are many questions of law and fact common to the claims of Plaintiff, the Class, and the Subclass and those questions predominate over any questions that may affect individual members. Common questions for the Class and Subclass include, but are not limited to, the following:

a.   Whether Defendants collect, capture, store, use, or disseminate the biometrics of the members of the Class and Subclass;

b.   Whether Defendants made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometrics;

c.   Whether Defendants obtained a written release from the members of the Class and Subclass before capturing, collecting, or otherwise obtaining their biometrics;

d.   Whether Defendants provided a written disclosure to the members of the Class and Subclass that explains the specific purposes, and the length of time, for which their biometrics were collected, stored, and used before collecting such biometrics;

e.   Whether Defendants' conduct violates BIPA;

f.   Whether Defendants' violations of BIPA are willful or reckless;

g.   Whether Defendants' violations of BIPA are negligent; and

h.   Whether Plaintiff and other Class and Subclass members are entitled to damages and injunctive relief.

43.     Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions

12

FILED DATE: 10/18/2021 2:30 PM    2021CH05066

or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

44.      Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class or Subclass.

45.      Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

<u>**COUNT I**</u>
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**

46.      Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47.      Defendants are private entities under BIPA.

48.      BIPA requires private entities, such as Defendants, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being captured, collected, stored, and used; and

FILED DATE: 10/18/2021 2:30 PM    2021CH05066

(3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

49.     BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. An entity which possesses biometric identifiers or information must make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual).

50.     Plaintiff and the other Class and Subclass members have had their "biometric identifiers," namely their facial geometry and scans thereof, collected, captured, or otherwise obtained by Defendants.

51.     Plaintiff and the Class and Subclass members have been aggrieved by Defendants' failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

     a.  Defendants failed to inform Plaintiff and the Class and Subclass members in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

     b.  Defendants failed to inform Plaintiff and the Class and Subclass members in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

     c.  Defendants failed to inform Plaintiff and the Class and Subclass members in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

d.  Defendants failed to obtain a written release from Plaintiff and the Class and Subclass members, as required by 740 ILCS 14/15(b)(3);

e.  Defendants failed to make publicly available a written retention schedule detailing the specific length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and

f.  Defendants failed to obtain informed consent to disclose or disseminate the Class and Subclass members' biometrics, as required by 740 ILCS 14/15(d)(1).

52.     Defendants profited from Plaintiff's and the other Class and Subclass members' biometric identifiers through using such information to sell luxury eyewear products in violation of 740 ILCS 14/15(c). Defendants knew, or were reckless in not knowing, that the Virtual Try-On biometric capture and collection software they used would be subject to BIPA and nevertheless wholly failed to comply with the statute.

53.     By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class and Subclass members' biometrics as described herein, Defendants denied Plaintiff and the Class and Subclass members their right to statutorily-required information, and violated their respective rights to biometric information privacy, as set forth in BIPA.

54.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

55.     Defendants' violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements, as BIPA has been in existence since 2008, and BIPA's minimally burdensome compliance regime may be satisfied with a single

FILED DATE: 10/18/2021 2:30 PM 2021CH05066

sheet of paper or a single webpage screen. Alternatively, Defendants negligently failed to comply with BIPA's disclosure, consent, and policy posting requirements.

56.     Accordingly, Plaintiff, on behalf of himself and the proposed Class and Subclass, prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class and Subclass, respectfully requests that this Court enter an Order:

a.     Certifying the Class and Subclass as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b.     Declaring that Defendants' actions, as set forth herein, violate BIPA;

c.     Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class and Subclass by requiring Defendants to comply with BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and biometric information;

d.     Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e.     Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f.     Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

g.     Awarding pre- and post-judgment interest, as allowable by law; and

h.     Awarding such further and other relief as the Court deems just and equitable.

FILED DATE: 10/18/2021 2:30 PM    2021CH05066

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: October 18, 2021    Respectfully Submitted,

            CHRISTOPHER PECHO, individually and on
            behalf of similarly situated individuals

        By:  /s/ Timothy P. Kingsbury
            *One of Plaintiff's Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
David Gerbie
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
dgerbie@mcgpc.com

*Attorneys for Plaintiff and the Putative Class and Subclass*

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons (06/28/18) CCG 0001

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

FILED
10/18/2021 2:30 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15243396

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHRISTOPHER PECHO

(Name all parties)

Case No. 2021-CH-05066

v.

FITTINGBOX, INC., a Delaware Corporation;

MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, INC., an Illinois Corporation

**FITTINGBOX INC., c/o INC. PLAN (USA)**
**Trolley Square, Suite 20C**
**Wilmington, DE 19806**

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

Witness: 10/18/2021 2:30 PM IRIS Y. MARTINEZ

Atty. No.: 56618

Atty Name: Timothy P. Kingsbury

Atty. for: Plaintiff

Address: 55 West Wacker Drive, 9th Fl.

City: Chicago   State: IL

Zip: 60601

Telephone: 312-893-7002

Primary Email: tkingsbury@mcgpc.com

Secondary Email: eturin@mcgpc.com

Tertiary Email: dgerbie@mcgpc.com

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois   cookcountyclerkofcourt.org**

**CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS**

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

FILED DATE: 10/18/2021 2:30 PM   2021CH05066

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois   cookcountyclerkofcourt.org**

FILED
10/21/2021 3:09 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH05066

15302403

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

CHRISTOPHER PECHO, individually )
and on behalf of similarly situated )
individuals, )
)                   No. 2021-CH-05066
*Plaintiff,* )
)
v. )                   Hon. Allen P. Walker
)
FITTINGBOX INC., a Delaware )
Corporation; MAUI JIM, INC., an Illinois )
Corporation; and MAUI JIM USA, Inc., )
an Illinois Corporation, )
)
*Defendants.* )

**PLAINTIFF'S AMENDED MOTION**
**FOR CLASS CERTIFICATION OR, ALTERNATIVELY,**
**FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY**

Plaintiff Christopher Pecho, by and through his undersigned counsel, pursuant to 735 ILCS
5/2-801, moves for entry of an order certifying the Class proposed below, appointing Plaintiff as
Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff
requests, to the extent the Court determines further evidence is necessary to prove any element of
735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period
to complete discovery. *See, e.g.*, *Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*,
2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir.
2011). In support of his Amended Motion, Plaintiff submits the following Memorandum of Law.

1

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

Dated: October 21, 2021

Respectfully submitted,

CHRISTOPHER PECHO, individually and
on behalf of similarly situated individuals

By: /s/ Timothy P. Kingsbury
*One of Plaintiff's Attorneys*

Eugene Y. Turin
David L. Gerbie
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
dgerbie@mcgpc.com
tkingsbury@mcgpc.com

*Attorneys for Plaintiff and the Putative Class and Subclass*

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## AMENDED MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR
## A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY

This Court should certify a class and subclass of individuals whose biometrics were obtained by Fittingbox Inc., Maui Jim, Inc., and Maui Jim USA, Inc. ("Defendants") in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Defendants use Fittingbox's Virtual Try-On software to increase online sales of eyewear products. However, unbeknownst to customers such as Plaintiff and the other members of the putative Class, Fittingbox's Virtual Try-On software extracts consumers' facial geometry biometrics in order to superimpose sunglasses, eyeglasses, and other similar accessories on their faces while they use the technology. In implementing this invasive technology, Defendants have violated BIPA because they failed to obtain proper consent prior to collecting and disseminating Plaintiff's and the other class members' facial geometry biometrics, failed to make publicly available any written biometric retention and destruction schedule, and profited directly from their biometric data. After Plaintiff learned of Defendants' wrongful conduct, he brought suit on behalf of a class of similarly situated individuals to put a stop to Defendants' collection of Illinois residents' facial geometry biometrics in violation of BIPA, and to obtain redress for all persons injured by their conduct.

## I.      INTRODUCTION: BIPA

The Illinois Biometric Information Protection Act is designed to protect individuals' biometrics. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296. Under BIPA, biometric identifiers include fingerprints, voiceprints, or scans of hand or face geometry; while biometric information can be defined as any information based on a biometric

3

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

identifier, regardless of how it is converted or stored. (First Amended Class Action Complaint, "Compl.," ¶ 1).

In recognition of the importance of the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they: (1) inform that person in writing that biometric identifiers or information will be captured, collected, stored, or used; (2) inform that person in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being captured, collected, stored, and used; (3) receive a written release from the person for the collection of his or her biometric identifiers and/or information; and (4) publish publicly and make available a written retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15; Compl., ¶ 4. In addition, BIPA also prohibits private companies from selling, leasing, trading, or otherwise profiting from a person's or a customer's biometric identifier or biometric information. 740 ILCS 14/15(c); Compl., ¶ 6. And lastly BIPA prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of biometrics without consent, unless the "disclosure or redisclosure completes a financial transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d); Compl., ¶ 6.

## II.     **FACTUAL BACKGROUND**

### A.     **The Underlying Misconduct.**

Defendant Fittingbox is a provider of Virtual Try-On software and services to companies within Illinois and across the country that interact with Illinois residents daily. (Compl., ¶ 15.) Fittingbox's main product allows online shoppers to interact with a facial recognition and augmented reality system that superimposes images of eyewear on their face based on

measurements of their facial geometry. (Compl., ¶¶ 22–23.) Critically, Fittingbox's Virtual Try-On software functions by collecting and analyzing facial geometry biometrics to superimpose images of eyewear upon images of the consumer's face, and to gather analytics and information from the interaction with the consumer (*Id.* at ¶¶ 31, 37.)

One of Defendant's largest customers that utilizes its Virtual Try-On software is Maui Jim. (*Id.* at ¶ 20, 25.) Maui Jim, like numerous other Fittingbox customers, purchased access to Defendant's Virtual Try-On software to create an interactive shopping experience in which consumers are able to "try on" depictions of eyewear in real-time. (*Id.* at ¶ 24-26.) However, as with other customers utilizing Fittingbox's Virtual Try-On software, Maui Jim failed to implement a uniform policy to ensure that individuals are informed that their facial geometry scan biometrics are being collected, analyzed, and disseminated. (*Id.* at ¶ 32-33.)

Plaintiff interacted with Defendants' Virtual Try-On software in September, 2021 when he visited Maui Jim's website while shopping online for sunglasses. (*Id.* at ¶ 27.) During his visit to the website, Plaintiff's facial geometry scan biometrics were obtained and utilized by Defendants' Virtual Try-On software to create a detailed template of his unique facial geometry that Defendants then used to resize and virtually show various pairs of sunglasses on his face (*Id.*) However, as with thousands of other Illinois residents who interact with Defendants' Virtual Try-On software on a daily basis, Plaintiff did not at any time before or during his visit to Maui Jim's website give consent for Defendant to do obtain, disseminate, use, or collect his facial geometry biometrics. (*Id.* at ¶¶ 32.)

5

FILED DATE: 10/21/2021 3:09 PM  2021CH05066

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

### B.      The Proposed Class and Subclass

Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class and Subclass defined as follows:

> **The Fittingbox Class**: All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Fittingbox within the state of Illinois any time within the applicable limitations period.
>
> **The Maui Jim Subclass:**
>
> All individuals whose biometrics were captured, collected, stored, used, transmitted, and/or disseminated by Defendant Maui Jim within the state of Illinois any time within the applicable limitations period.

(Compl., ¶ 38.) As explained below, the proposed Class satisfies each of the four requirements for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity, commonality, adequacy of representation, and fair and efficient adjudication. A class action is not just appropriate here, it is also the only way that the members of the putative Class and Subclass can obtain appropriate redress for Defendants' unlawful conduct.

## III.    ARGUMENT

### A.      Standards for Class Certification

To obtain class certification, it is not necessary for a plaintiff to establish that he will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and citation omitted)). As such, in determining whether to certify a proposed class, the Court should accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1)   The class is so numerous that joinder of all members is impracticable.
> (2)   There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
> (3)   The representative parties will fairly and adequately protect the interest of the class.
> (4)   The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class, and the Court should therefore certify the proposed Class.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not

yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

## B.        The Numerosity Requirement is Satisfied

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are thousands of members of the Class. (Compl., ¶ 40.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Class can be easily and objectively determined from Defendants' records as their Virtual Try-On software and other web analytics software tracks all customer interactions and the IP addresses and other identifying characteristics from which they originate, as well as the accompanying customer records maintained by Defendants' customers.

FILED DATE: 10/21/2021 3:09 PM    2021CH05066

FILED DATE: 10/21/2021 3:09 PM    2021CH05066

Furthermore, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, because each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

### C. Common Questions of Law and Fact Predominate

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984). These common questions include: whether Defendants collect, capture, or otherwise obtain biometrics from Illinois residents who interact with their Virtual Try-On software; whether Defendants disseminated facial geometry scan biometrics of Illinois residents; whether Defendants obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their facial geometry scan biometrics; whether Defendants' conduct violates BIPA; whether Defendants' BIPA violations are willful or reckless; and whether Plaintiff and the Class are entitled to damages and injunctive relief. (Compl., ¶ 42.)

As alleged, and as will be shown through obtainable evidence, during the relevant time period Defendants engaged in a common course of conduct by collecting, capturing, storing, disseminating and profiting from Class members' facial geometry biometrics without obtaining

FILED DATE: 10/21/2021 3:09 PM    2021CH05066

the proper consent required by BIPA. Given that BIPA requires a record of consent to engage in such conduct, whether Defendants had valid consent is also a common issue subject to common resolution. Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this hurdle to certification.

### D.    Adequate Representation

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class. Plaintiff has alleged that, like the other members of the Class, his facial geometry biometrics were obtained by Defendants through their Virtual Try-On software and without his consent. (Compl., ¶¶ 22–33.) Plaintiff's pursuit of this matter against Defendants demonstrates that he will be a zealous advocate for the Class. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in several complex consumer class actions. Accordingly, the proposed class representative and proposed class counsel will adequately protect the interests of the members of the Class, thus

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

satisfying Section 2-801(3).

### E.   Fair and Efficient Adjudication of the Controversy

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of…protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving data privacy violations and data breaches, which can involve significant injury to the those affected, but result in many small, individual claims. Here, absent a class action, most members of the Class would find the cost of litigating their statutorily-limited claims to be prohibitive, and multiple

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

individual actions would be judicially inefficient. *Id.*

Certification of the proposed Class is necessary to ensure that Defendants' conduct becomes compliant with BIPA, to ensure that the Class members' privacy rights in their biometrics are sufficiently protected, and to compensate those individuals who have had their statutorily-protected privacy rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress, or that Defendant would willingly implement the procedures necessary to comply with the statute. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class, appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. Alternatively, the Court should defer ruling on this Amended Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: October 21, 2021

Respectfully submitted,

CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals

By: /s/ Timothy P. Kingsbury
*One of Plaintiff's Attorneys*

Eugene Y. Turin
David L. Gerbie
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
dgerbie@mcgpc.com

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

tkingsbury@mcgpc.com
*Attorneys for Plaintiff and the Putative Class and Subclass*

FILED DATE: 10/21/2021 3:09 PM   2021CH05066

## <u>CERTIFICATE OF FILING</u>

I hereby certify that on October 21, 2021, I caused the foregoing *Plaintiff's Amended Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* to be electronically filed with the Clerk of the Circuit Court of Cook County using the CM/ECF system.

<u>/s/ Timothy P. Kingsbury</u>