UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER PECHO, individually and on behalf of similarly situated individuals,<br>　　　　　　　Plaintiff,<br>　　v.<br><br>MAUI JIM, INC., an Illinois Corporation; and MAUI JIM USA, INC., an Illinois Corporation,<br><br>　　　　　　　Defendants. | No. 21-cv-6202<br><br>Hon. Rebecca R. Pallmeyer |

## SECOND AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff Christopher Pecho ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this Second Amended Class Action Complaint pursuant to FRCP 15(a)(1) against Defendants Maui Jim, Inc. and Maui Jim USA, Inc. (together "Maui Jim"), for their violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for persons injured by Defendants' conduct. Plaintiff alleges the following based on personal knowledge as to his own experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

### INTRODUCTION

1.　BIPA defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

2.　This case concerns the misuse of individuals' biometrics in the form of scans of their facial geometry by Maui Jim, a luxury sunglasses retailer that utilized biometrically-enabled

"Virtual Try-On" technology to market and sell its eyewear products. Through Maui Jim's utilization of such Virtual Try-On software, Maui Jim has captured, collected, disseminated, and/or otherwise used the biometrics of Plaintiff and other consumers throughout Illinois, without their informed written consent as required by law.

3. Facial geometry is a unique and permanent biometric identifier associated with each individual. The unauthorized handling of such sensitive information exposes consumers to serious and irreversible privacy risks. If for example, a database containing scans of face geometry or other sensitive biometric data is hacked, breached, or otherwise exposed, consumers cannot simply change their biometric identifiers like they could reset a password or cancel a credit card.

4. Having recognized that biometrics present unique privacy concerns, the Illinois Legislature enacted BIPA to regulate companies that collect and store Illinois citizens' biometrics. BIPA provides, *inter alia*, that private entities, such as Defendants, may not collect, capture, purchase, receive through trade or otherwise obtain an individual's biometrics unless they first:

> (1) inform the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored, 740 ILCS 14/15(b)(1);
>
> (2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored, and used, 740 ILCS 14/15(b)(2); and
>
> (3) receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information, 740 ILCS 14/15(b)(3).

5. BIPA also requires a private entity in possession of biometric identifiers or biometric information to make publicly-available a written policy outlining its storage and destruction policies for such biometric identifiers, and/or any biometric information derived from such identifiers. 750 ILCS 14/15(a).

6. Finally, private entities are prohibited from profiting from an individual's biometric identifiers or biometric information, and from disclosing or disseminating the same to third parties without informed consent. 740 ILCS 14/15(c)–(d).

7. The deprivation of the statutory rights conferred by BIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

8. In direct violation of each of the foregoing provisions, Defendants are actively capturing, collecting, storing, and otherwise obtaining—without providing notice, obtaining informed written consent, or publishing data retention policies—the biometrics of thousands of individuals throughout Illinois who use the Virtual Try-On software available on Maui Jim's website.

9. When consumers visit the Maui Jim website and utilize the Virtual Try-On software, they are led to believe and understand that they are interacting with Maui Jim.

10. In their operation of the Maui Jim website, Defendants have captured, collected, received through trade, or otherwise obtained, and stored thousands of templates of facial geometry—highly detailed geometric maps of the face—from thousands of Illinois individuals including Illinois residents like Plaintiff. Defendants obtained these facial geometry template through sophisticated facial recognition technology that scans, extracts, and analyzes data from the points and contours of faces that appear in photos and videos taken on mobile devices and computers. Defendants use such scans of facial geometry to increase sales of luxury eyewear and

other accessories. Each template of facial geometry that Defendants extract from consumers is unique to that individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

11. Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper, or its electronic equivalent. BIPA's requirements bestow a right to privacy in biometrics and a right to make an informed decision when electing whether to provide or withhold biometrics.

12. Defendants collect the facial geometry of their customers in Illinois without first obtaining those individuals' informed written consent and without informing them of how long they intend to keep such biometrics, as required by BIPA.

13. Defendants also store those individuals' biometrics but have failed to publish a written policy specifying how long they retain such data and when they will destroy it, as required by BIPA.

14. Plaintiff brings this action for damages and other legal and equitable remedies resulting from Defendants' illegal actions in capturing, collecting, storing, using, and disclosing his biometrics, and those of hundreds of other consumers throughout the state of Illinois, without their informed written consent, and without making publicly available a written policy detailing how they store and dispose of this irreplaceable information, in direct violation of BIPA.

15. On behalf of himself and the proposed Class defined below, Plaintiff seeks an injunction requiring Defendants to comply with BIPA, as well as an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

16. Defendants Maui Jim, Inc. and Maui Jim USA, Inc, are Illinois corporations that conduct substantial business throughout Illinois, including in Cook County. Maui Jim's headquarters are located at One Aloha Lane, Peoria, IL 61615.

17. At all relevant times, Plaintiff Christopher Pecho has been a resident and citizen of the State of Illinois, specifically Cook County.

## JURISDICTION AND VENUE

18. This case was removed by Fittingbox, Inc. pursuant to CAFA, but for the reasons stated in Plaintiff's Motion to Remand, this Court must decline to assert subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(4) *et seq*.

19. The Circuit Court of Cook County, Illinois may assert personal jurisdiction over Maui Jim pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Maui Jim, Inc. and Maui Jim USA, Inc. are corporations organized under the laws of Illinois, are doing business within Illinois, and because Plaintiff's claims arise out of Maui Jim's unlawful Illinois actions, as Maui Jim captured, collected, stored, and used Plaintiff's biometric identifiers and/or biometric information in Illinois.

20. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because both Maui Jim entities are doing business in Cook County and thus reside there under § 2-102, and because the biometric transactions out of which this cause of action arises occurred in Cook County.

## FACTS SPECIFIC TO PLAINTIFF

21. As shown below, in operating the Maui Jim website, Defendants utilize a biometric capture and analysis software that captures biometric identifiers and biometric information.

5

22. Namely, Defendants utilize software which relies on capturing and using facial geometry to enable their "Virtual Try-On" service. This "Virtual Try-On" service is used to market Maui Jim sunglasses to consumers. The Virtual Try-On software Defendants use collects and stores facial geometry biometrics to allow a consumer to virtually "try-on" sunglasses.

23. Maui Jim manufactures and sells several brands of luxury sunglasses and apparel. Maui Jim's products are available for purchase directly from the company through its website, mauijim.com.

24. As shown below, in an effort to increase sales of its eyewear products, Maui Jim integrated biometrically-enabled Virtual Try-On software on its website. The Virtual-Try-On software serves no other purpose than to increase sales, drive customer engagement, and visually demonstrate what its products will look like on a consumer's face.



25. In doing so, Maui Jim utilizes biometric technology to scan the faces of its potential customers using the cameras on their phones or computers and superimposes sunglasses on their faces.

26. For example, Plaintiff visited Maui Jim's website www.mauijim.com on or about September 16, 2021 and used Defendants' Virtual Try-On software to see what several pairs of Maui Jim's sunglasses would look like on him.

27. Plaintiff visited Maui Jim's website while in Cook County, Illinois, where he resides.

28. The Virtual Try-On software available on the Maui Jim website used the web camera on Plaintiff's computer to scan Plaintiff's face and create a detailed template of his unique facial geometry that Defendants used to determine where exactly to digitally superimpose the various pairs of sunglasses on his face.

29. Plaintiff relied on Defendants to not only provide lawful and legally compliant software for Plaintiff to use, but to also disclose all material information regarding the software, including all relevant retention, destruction, and dissemination policies as they relate to the use of his biometrics.

30. After capturing Plaintiff's facial biometrics through the Maui Jim website, Defendants disseminated Plaintiff's and other Class members' biometrics to third parties, including their technology vendors for data storage purposes.

31. Prior to taking Plaintiff's and the other Class members' biometrics, Defendants did not inform Plaintiff and the other Class members in writing that their biometrics were being collected, stored, used, otherwise obtained, or disseminated, or in any way received their informed written consent to collect, capture, use, or otherwise obtain such information.

32. Defendants have also failed to make publicly available any written policy as to their biometric retention and destruction schedule.

33. Maui Jim's website contains very specific disclosures which describe and explain the information Maui Jim collects as well as consumers' rights under the European Union General Data Protection Directive ("GDPR") and other applicable data protection legislation. The presence of this information indicates that Maui Jim was and is aware of the importance of compliance with various data privacy laws.

> **PRIVACY AND SECURITY POLICY**
>
> Aloha! As part of our 'Ohana, we at Maui Jim, Inc., Maui Jim USA, Inc., and other affiliated companies (collectively, the "Company" or "Maui Jim") believe strongly in protecting your privacy. That's why we're committed to the Direct Marketing Association's "Privacy Promise to American Consumers" as well as to protecting information covered by European Data Protection Directive 95/46/EC, European Directive 2009/136/EC, their replacements (including European Union General Data Protection Regulation (GDPR)), and other applicable data protection legislation (collectively, the "Data Privacy Laws"). Therefore, we have agreed to:
>
> 1. Provide customers with the notice of their ability to opt out of information rental, sale, or exchange with other marketers;
> 2. Honor customers' requests not to share their information with other marketers; and
> 3. Honor customers' requests not to receive mail, telephone, or other solicitations from the Company.

34. At the bottom of its website, well below where any user would need to scroll to use its Virtual Try-On technology, Maui Jim also purports to create terms of use in which it seeks to bind itself and users of its website to the laws of the State of Illinois.

> 4. **Governing Law.** This agreement and all rights and obligations of the parties shall be governed by and construed in accordance with the laws of the State of Illinois without regard to its conflicts of laws provisions.

35. As with its specific acknowledgment of GDPR and its requirements, Maui Jim's specific references to Illinois laws indicates that it was and is aware of its duty to comply with

8

those laws, including Illinois Biometric Information Privacy Act. As such, Maui Jim's violations of BIPA were reckless or willful, or at the very least negligent.

36. Defendants not only captured Plaintiff and other consumers' biometrics through their websites and other online software, but also other personal identifying information, including their names and mailing addresses where a consumer placed an order, IP addresses, internet search and browsing history, and other information that is easily used to identify the individual from whom such information is gleaned.

## CLASS ALLEGATIONS

37. Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows:

> All individuals whose biometrics were captured, collected, received through trade, or otherwise obtained, and/or disseminated through the use of Maui Jim's "Virtual-Try-On" software within the state of Illinois any time within the applicable limitations period.

38. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

39. Upon information and belief, there are at least thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendants' records.

40. Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other members are the same, and because Defendants' conduct has resulted in similar injuries to Plaintiff

and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendants' BIPA violations.

41. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

    a. Whether Defendants collect, capture, store, use, or disseminate the biometrics of the members of the Class;

    b. Whether Defendants made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometrics;

    c. Whether Defendants obtained a written release from the members of the Class before capturing, collecting, or otherwise obtaining their biometrics;

    d. Whether Defendants provided a written disclosure to the members of the Class that explains the specific purposes, and the length of time, for which their biometrics were collected, stored, and used before collecting such biometrics;

    e. Whether Defendants' conduct violates BIPA;

    f. Whether Defendants' violations of BIPA are willful or reckless;

    g. Whether Defendants' violations of BIPA are negligent; and

    h. Whether Plaintiff and other Class members are entitled to damages and injunctive relief.

42. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or

piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

43. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

44. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## **COUNT I**
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.,**

45. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46. Defendants are private entities under BIPA.

47. BIPA requires private entities, such as Defendants, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being captured, collected, stored, and used; and

11

(3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

48. BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. An entity which possesses biometric identifiers or information must make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual).

49. Plaintiff and the other Class members have had their "biometric identifiers," namely their facial geometry and scans thereof, collected, captured, or otherwise obtained by Defendants.

50. Plaintiff and the Class members have been aggrieved by Defendants' failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

    a. Defendants failed to inform Plaintiff and the Class members in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

    b. Defendants failed to inform Plaintiff and the Class members in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

    c. Defendants failed to inform Plaintiff and the Class members in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

12

    d. Defendants failed to obtain a written release from Plaintiff and the Class members, as required by 740 ILCS 14/15(b)(3);

    e. Defendants failed to make publicly available a written retention schedule detailing the specific length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and

    f. Defendants failed to obtain informed consent to disclose or disseminate the Class members' biometrics, as required by 740 ILCS 14/15(d)(1).

51. Defendants profited from Plaintiff's and the other Class members' biometric identifiers through using such information to sell luxury products in violation of 740 ILCS 14/15(c). Defendants knew, or were reckless in not knowing, that the Virtual Try-On biometric capture and collection software they used would be subject to BIPA and nevertheless wholly failed to comply with the statute.

52. By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class members' biometrics as described herein, Defendants denied Plaintiff and the Class members their right to statutorily-required information, and violated their respective rights to biometric information privacy, as set forth in BIPA.

53. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

54. Defendants' violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements, as BIPA has been in existence since 2008, and BIPA's minimally burdensome compliance regime may be satisfied with a single

sheet of paper or a single webpage screen. Alternatively, Defendants negligently failed to comply with BIPA's disclosure, consent, and policy posting requirements.

55. Accordingly, Plaintiff, on behalf of himself and the proposed Class, prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

  a. Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

  b. Declaring that Defendants' actions, as set forth herein, violate BIPA;

  c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and biometric information;

  d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

  e. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

  f. Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

  g. Awarding pre- and post-judgment interest, as allowable by law; and

  h. Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: February 18, 2022　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　CHRISTOPHER PECHO, individually and on behalf of a class of similarly situated individuals

　　　　　　　　　　　　　　　　　　By:　/s/ David L. Gerbie
　　　　　　　　　　　　　　　　　　　　　*One of Plaintiff's Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
David Gerbie
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
dgerbie@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*